ILLGES, Plaintiff and Respondent, vs. CONGDON, Defendant and Appellant: HAMM, Administratrix, Interpleaded Defendant and Respondent.

*May 16—June 10, 1947.*

For the appellant there was a brief by *Godfrey & Pfeil* of Elkhorn, and oral argument by *Alfred L. Godfrey.*

For the respondent George M. Illges there was a brief by *Cavanagh, Stephenson, Mittelstaed & Sheldon* of Kenosha, which was joined in and approved by *R. Stanley Kelly* of Burlington, attorney for Louise Hamm, administratrix of estate of John Hamm, and oral argument by *William A. Sheldon.*

BARLOW, J.   Upon a prior hearing of this case, reported in 248 Wis. 85, 20 N. W. (2d) 722, 21 N. W. (2d) 647, the court held that Illges and Hamm so materially breached the contract as to warrant Congdon in electing to terminate it, and that Congdon so terminated the contract.   It was a joint venture, in which the trees owned by Congdon were to be cut and sawed into lumber by Hamm, with Illges as the sales agent to dispose of the finished product.   Slab wood was to be divided equally between Congdon and Illges.   From the proceeds of the sale there was to be paid, (a) $15 per thousand board feet to Congdon for timber; (b) $30 per thousand to Illges and Hamm for logging, sawing, and converting the

timber into lumber products, and selling and disposing of the same; and (c) additional proceeds to be divided equally between Congdon, Illges, and Hamm. More detailed facts and terms of the contract are fully set forth in the previous opinion. The judgment of the trial court was reversed and the cause remanded for further proceedings in accordance with the opinion. The case is before us at this time as the result of the action of the trial court pursuant to said decision.

It is undisputed that seventy thousand board feet of lumber was produced, of which eighteen thousand board feet was sold. Before the enterprise was terminated Congdon took nine thousand feet of lumber for his own use, claiming respondents were to produce lumber for him at $18 per thousand feet. This left forty-three thousand feet of lumber produced which was undisposed of. At the termination of the contract Congdon took possession of the balance of the lumber, refusing to permit it to be sold as ordered by the trial court and requested by the respondents. Between the termination of the contract and the time of the trial of the original action Congdon used three thousand feet of lumber for his own use, and between the time of trial of the original action and June 20, 1946, he appropriated and used for his own purposes twelve thousand feet of lumber from the joint enterprise. The eighteen thousand feet of lumber that was sold brought $1,220.52, or an average price of $67.80 per thousand. $40 of this amount was received by Congdon, and the balance by Illges and Hamm, or $590.26 each.

October 1, 1942, Illges advanced to Congdon the sum of $1,500, which was to be repaid to Illges from Congdon's proceeds of the joint enterprise.

The trial court ordered the respective parties to pay to the clerk of court the proceeds received by them from the sale of lumber produced, and ordered Congdon to pay to Hamm and Illges $21 per thousand for the nine thousand feet of lumber

taken by Congdon while the joint enterprise was operating. Congdon was ordered to pay Illges the $1,500 advanced, with interest at six per cent from October 1, 1942, and to pay to the clerk of court $203.40 for the benefit of the joint enterprise for the three thousand feet of lumber taken by Congdon between the time of the termination of the contract and date of the first trial, at $67.80 per thousand. All lumber that remained which had not been taken by Congdon was ordered sold by the sheriff of Walworth county in the manner that personal property is sold on execution except that the publishing and posting of notices was to be for three weeks, and the proceeds of the sale paid into court by the sheriff. He provided that if the lumber sold for less than $2,712, which would be the amount forty thousand feet of lumber would produce at $67.80 per thousand, Congdon was to pay into court immediately upon confirmation of sale any deficit which the lumber produced. Thus all the proceeds of the joint enterprise were to be paid into court except the sum of $189 to be paid by Congdon for nine thousand feet of lumber taken by him from the stock pile before the contract was terminated, for which provision was made for the payment by Congdon direct to Illges and Hamm. The sheriff's fees and expenses and fees of the clerk of court were to be paid from the proceeds of the sale. In this manner all the assets of the joint enterprise would be converted into cash and deposited with the clerk of court. Distribution was ordered to be made in accordance with the terms of the contract, which in substance was one third to each party to the joint enterprise. The court found that Congdon suffered only nominal damages for breach of the contract.

Appellant contends that when he terminated the contract he became the owner of the lumber which had been produced for the joint enterprise and that respondents, Illges and Hamm, are entitled to $18.75 per thousand, which is the cost of producing the lumber as found by the trial court in the original

action, less any amount which they had already received. He also claims substantial damages by reason of the breach of the contract by respondents.

No claim is made by appellant that the lumber produced prior to the termination of the contract was inferior by reason of workmanship or manner of production. The lumber produced was of the type and kind anticipated to be produced. This portion of the contract was fully performed by the respondents. Appellant did not terminate the contract for the reason that respondents failed to properly produce the type of lumber which they contracted to produce. The contract was terminated for other material violations, which this court sustained. If appellant had not terminated the contract and had brought suit for damages for breach of contract he would have been unable to prove any damages by reason of the quality of the lumber produced or the workmanship in producing it. As the lumber was produced it became the property of the joint enterprise and appellant suffered no damage by reason of this fact. If respondents had violated no other material portion of the contract it would have been continued and appellant would have realized from the sale of the lumber the amount which the court has here awarded him. The theory underlying the right of recovery in a case where there is a breach of contract is to permit the innocent party to recover from the guilty party any loss or damage which the innocent party suffered by reason of the breach. It is not the purpose of the law to penalize the guilty party for the breach to the profit of the innocent party. *Fischer v. Schumacher* (1932), 207 Wis. 10, 238 N. W. 801; *Manning v. School District No. 6* (1905), 124 Wis. 84, 102 N. W. 356.

With reference to the question of damages it was said in the original opinion (p. 95a) :

"Whether the refusal of plaintiff and interpleaded defendant to carry out the terms of this contract was such material breach as to warrant rescission is a question of whether it is more conformable to justice to permit the defendant to rescind

it or on the other hand to require him to perform his promise and bring an action for damages."

In that statement we were correct, but in the opinion on rehearing we close by saying that the only questions left for determination were the damages, if any, Congdon suffered, and the rights of the parties in the remaining assets of the joint enterprise in accordance with the terms of the contract. In the last statement the court was in error for the reason that having terminated the contract Congdon had no standing to sue for damages, having put an end to the promise on which any such action would have to be based. His sole remedy was restitutionary—to recover what he had put into the enterprise upon an accounting with his coadventurers.

Since the trial court found upon the remand that Congdon sustained no damages the error was harmless. The proper rule is that the termination of a contract ends actions for damages based upon a breach of the promise. By virtually repudiating the contract prior to its termination by Congdon, Illges and Hamm cannot now claim damages for alleged breaches by Congdon. In this connection see *E. L. Husting Co. v. Coca Cola Co.* (1931) 205 Wis. 356, 373, 237 N. W. 85, 238 N. W. 626, where this court said:

"While the right to rescind upon repudiation or a material breach probably exists even though the party has not performed, 'such a person will not wish ordinarily to avoid the contract altogether, because that course would deprive him of any right of action whatever. He could seek neither restitution, because he had given nothing, nor compensation in damages for breach of the contract, because he had put an end to the premise on which he must sue.' 3 Williston, Contracts, p. 2609."

This disposes of the question of damages claimed by all parties.

Respondents on review claim that the trial court erred in not requiring Congdon to pay into court $67.80 per thousand for the nine thousand feet of lumber taken by him during the

time the joint enterprise was operating, in place of requiring him to pay $21 per thousand net to the respondents for the production of this lumber. It is claimed that finding number 15 of the trial court, that there was no agreement obligating Illges, Hamm, or the joint enterprise to furnish to or saw lumber for Congdon at $18 per thousand, or at any other price, was affirmed by this court as the law of the case, and that the actual value of the lumber, which the court found was $67.80 per thousand, should be paid into the joint enterprise for the nine thousand feet of lumber in question used by Congdon.

Hamm delivered this lumber to Congdon at his request, and billed him for part of it at $18 per thousand feet and the balance at $24 per thousand feet, which he later attempted to explain by saying Congdon had informed him he had such an agreement with Illges. The trial court apparently was not too impressed with this explanation. However this may be, the law of the case was determined on the original trial and on the original appeal, from which we conclude Congdon must account to the joint enterprise for the actual value of this lumber, which is $67.80 per thousand feet. Whether this is done by paying Illges and Hamm two thirds of the value of the lumber or by Congdon being required to pay the full value of the lumber into the joint enterprise is not material, as it brings about the same result.

Other questions submitted have been carefully examined but we feel no useful purpose will be served by extending this opinion with a discussion of them. We conclude that the trial court properly determined the rights of the parties except as above stated.

*By the Court.*—The judgment is modified as stated in the opinion, and affirmed as so modified.