John PAUL, Jr., et al., Plaintiffs,

v.

Gerald **LINDGREN** and Richard Lindgren, Individually and d/b/a Lindgren Construction Company, a partnership, Defendants.

No. 73 C 1946.

United States District Court,
N. D. Illinois.

April 23, 1974.

Herbert M. Berman, Arnold & Kadjan, Chicago, Ill., for plaintiffs.

Victor Potysman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants' motion to dismiss and in the alternative for summary judgment, and the plaintiffs' cross motion for summary judgment.

This action is brought under 29 U.S.C. § 185 for an alleged violation of a contract between an employer and a labor organization. The plaintiffs are the Trustees of the Laborers' Pension Fund, Laborers' Welfare Fund, and the Laborers' Vacation Fund, which trusts apparently were created and exist in accordance with the provisions of 29 U.S.C. § 186(c) and pursuant to a certain Agreement and Declaration of Trust.

The defendants Gerald Lindgren and Richard Lindgren, individually and d/b/a Lindgren Construction Company, a partnership (hereinafter referred to as "Lindgren") are employers engaged in an industry affecting commerce, as defined by the Labor Management Act of 1947.

The plaintiffs, in their amended complaint, allege, *inter alia,* the following facts:

1. Gerald Lindgren and Richard Lindgren have agreed to be bound by the terms of the Collective Bargaining Agreement, the Welfare Trust and the Pension Fund Trust by virtue of executing a signed Memorandum of Understanding with the Construction and General Laborers District Council of Chicago and vicinity on June 9, 1971. Further, said defendants have been members of the Mason Contractors Association, a signatory to the Collective Bargaining Agreement since 1961, which association was the bargaining agent with the Construction and General Laborers District Council of Chicago and vicinity on behalf of the defendants herein. Defendants, Gerald Lindgren and Richard Lindgren, individually and d/b/a Lindgren Construction Company, a partnership, knew and acquiesced to the terms of the Trust Agreements by virtue of signing report forms which provides as follows:

"We hereby certify that this report includes all hours worked by all laborers in our employ for the month shown above and further that the employer hereby subscribes to and agrees to be bound by the provisions and terms of the Trust Agreements between Construction and General Laborers' District Council of Chicago and Vicinity and Builders' Association, et al, for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity dated May 25, 1950, and Laborers' Pension Fund dated June 1, 1963, and the Laborers' Hol-

iday or Vacation Fund dated May 31, 1968, and accepts all of them fully as though the same were herein contained and further agrees to accept as a personal obligation for himself and on behalf of his firm to oversee the payment of the established rates of contributions to the aforesaid Funds."

The report forms have all been duly forwarded and executed by the defendants and the reports have been forwarded by each defendant to the plaintiffs in consecutive monthly fashion for a long period of time. By this course of conduct, defendants impliedly contracted with the plaintiffs herein to abide by the terms of said Trust Agreement; the plaintiff Trustees relied upon the representations made by defendants in reporting on the forms that they would be bound by said Trust Agreements; and that they are a contractual party to the Trust Agreement. The employees through the years have made claims and claims have been paid by plaintiffs herein in reliance upon defendants being bound to the terms of the said Trust Agreements. The defendants herein knew of and acquiesced to be bound to said written Trust Agreements by virtue of the fact that they bid its jobs and charged the owners and general contractors on its projects based upon the fact that they would have to pay pension and welfare benefits to their employees based upon the Trust Agreements. The defendants further acquiesced and agreed to be bound by the terms of the Trust Agreements by virtue of language in its contracts with general contractors wherein they agreed to pay all union benefits due. The defendants on numerous occasions discussed reports and payments with the Administrators of the Trust Funds and indicated to said Administrators they agreed to be bound by said Trust Agreement and further, the Administrators of the Trust Funds relied upon the representations

of the defendants by and through its duly authorized and acting agents in the scope and course of their authority. The defendants herein recognized and agreed to be bound by said Trust Funds due to their conduct in underreporting hours and underreporting number of men working; because if the defendants considered that they are not bound by the Trust Agreements, they would not take a course of conduct deliberately understating liability under the Trust Fund Agreements.

2. As provided in the Agreement and Declaration of Trust, plaintiffs, as Trustees aforesaid, are required to receive, hold and manage all moneys required to be contributed to Laborers' Pension Fund, Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' Vacation Fund, in accordance with the provisions of the then applicable collective bargaining agreement, as a Trust Fund, for the uses and purposes set forth in the Agreement and Declaration of Trust governing the Fund to which the contributions are made. By virtue of provisions contained in the Collective Bargaining Agreements to which defendants are bound, defendants did promise and become obligated to make contributions, in certain amounts as set forth in the Agreements, to said funds on behalf of their employees for each hour worked or for which wages were received by such employees. Defendants further agreed that all amounts required to be paid into the respective funds, shall be paid not later than the 10th day of the month next succeeding the month in which an employee covered by the collective bargaining agreement worked or received wages. Defendants further agreed to furnish to the Trustees of the Laborers' Pension Fund, the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity, and Laborers' Vacation Fund, a monthly contribution report, setting forth therein:

(a) the names of employees;

(b) hours for which wages were received by the employee;

(c) contributions required to be made on behalf of each employee, or in such cases where no employee worked or received wages, a statement to that effect and indicating no contributions were required to be made for such period. Each employer bound by the Collective Bargaining Agreement has agreed that a failure by an employer to make payment of contributions required to be made thereunder shall constitute a violation of said agreement by such employer.

3. Pursuant to provisions contained in the Agreement and Declaration of Trust, the Trustees acting thereunder are authorized and empowered to examine and copy the payroll books and records of an employer to permit such Trustees to determine whether an employer is making full payment as required under the applicable Collective Bargaining Agreement. It is further provided therein, that in the event upon an audit made by the Trustees and/or upon other evidence it shall be found that an Employer has failed to make all contributions required on such employer's part to be made, Trustees shall impose the following upon such delinquent employer:

a. all costs of such audit shall be paid by such employer;

b. as provided in the Agreement and Declaration of Trust such employer shall pay, in addition to the amounts determined to be due, a sum equal to ten per cent thereof;

c. all costs, expenses and attorney's fees incurred by the Trustees; and

d. to furnish to Trustees, as a guarantee for the making of monthly payments an amount equal to three times the monthly payments of an employer as estimated by the Trustees and to further require that such guarantee be continuously maintained.

4. Notwithstanding the foregoing, defendants have violated the obligations on defendant's part undertaken, in that the defendants failed:

a. to permit an audit of his payroll books and records as required by the Trust Agreements;

b. to make timely and complete payments to plaintiff Trustees herein.

The above described omissions and breaches of Agreement by the defendant will have the following consequences:

The Trustees of the Laborers' Pension Fund will be required to deny the employee-beneficiaries of such Fund, for whom required contributions have not been made, the benefits provided thereunder, thereby causing to such employee-beneficiary substantial and irreparable damage.

The Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity will be required to provide to employees of defendant benefits provided hereunder, notwithstanding the failure of defendant to make required contributions thereto, thereby reducing the corpus of such Fund and endangering the rights of employee-beneficiaries thereunder on whose behalf contributions are being made, all to their substantial and irreparable injury. The Trustees of the Laborers' Vacation Fund will be unable to make full payment of vacation pay to laborers as the same becomes due.

5. Plaintiffs, in their behalf and on behalf of all employees for whose benefit the Laborers' Pension Fund, the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and Laborers' Vacation Fund

have been established, have requested defendant to perform its obligations, but defendants have refused and failed to perform. Plaintiffs are without an adequate remedy at law and will suffer immediate, continuing and irreparable injury, loss and damage unless defendants are ordered to specifically perform all obligations on defendants' part required to be performed under the Collective Bargaining Agreement and Agreement and Declaration of Trust, and are restrained from continuing to refuse to perform as thereunder required.[1]

The defendants, in support of their motion to dismiss and in the alternative for summary judgment, contend that:

1. This Court does not have jurisdiction over the instant action pursuant to 29 U.S.C. § 185.

2. The defendants have not been members of the Mason Contractors Association of Cook County since 1968 and thus cannot be liable to the trustees or to the union based upon any agreement between that Association and the union.

3. The purported Memorandum of Understanding was not executed by the Trustees of the Pension Fund, Welfare Fund or Holiday or Vacation Fund, and is therefore not a valid and binding Agreement.

4. The Holiday or Vacation Trust Fund has been terminated and therefore the plaintiff-trustees of the Fund have no authority to sue thereon.

5. Defendants have ceased to be an employer, if indeed, they ever were, as defined in Article XI, Section 1, of the Laborers' Pension Fund and therefore by the terms thereof are not obligated to make contributions thereto. In addition, this Court would not have jurisdiction under Chapter 7, 29 U.S.C. § 185 in that there would be no employer as required by that Section.

6. Plaintiffs' allegation of implied contract, estoppel and reliance are invalid as a matter of law. Further the alleged liability based on the alleged implied contract is limited to the period of the prior five years according to the applicable Illinois Statute of Limitations.

The plaintiffs, in opposition to the defendants' motion to dismiss or in the alternative for summary judgment and in support of their motion for summary judgment, contend that:

1. This Court has jurisdiction over an action against an employer brought by Trustees of funds created in accordance with the Labor Act.

2. Lindgren is an employer and thus subject to suit under Section 301 of the Labor Act.

3. As third party beneficiaries of labor agreements, the Trustees may derive benefits therefrom and sue thereunder, even if it is assumed that they have not properly executed the Memorandum of Agreement.

4. The District Council is not an indispensable party to this action.

5. Lindgren is obligated to all Trust Fund requirements described in the Collective Bargaining Agreement for the past ten years, by virtue of:

a. Lindgren's membership, which they have never disavowed, in the

---

[1]. In their complaint the plaintiffs seek the following relief:

a. That defendants be ordered to produce their payroll books and records for audit in order to liquidate the true debt due and owing to plaintiffs herein.

b. That judgment be entered for plaintiff and against the defendants, Gerald Lindgren and Richard Lindgren, individually and d/b/a Lindgren Construction Company, a partnership, in such sums as said audit as aforesaid discloses to be due to plaintiffs herein.

District Council and in the Association;

b. Lindgren's execution of a Memorandum of Agreement incorporating the applicable labor agreement, and reaffirming obligations under prior agreements, in 1971 and again in 1973; and

c. Lindgren's adoption and ratification of all obligations to the Funds by the payment of benefits thereto and by other acts and conduct inconsistent with non-affirmation.

It is the opinion of this Court that it has jurisdiction over the instant action, that the instant amended complaint adequately states a claim upon which relief can be granted, but that there exist genuine issues of material fact which preclude summary judgment at this time.

The consideration of the following additional facts supplied by affidavits and documents submitted by the plaintiffs are important to the proper disposition of the instant motions.

On March 30, 1961 Lindgren joined the Mason Contractors' Association of Cook County ("Association").[2] The primary function of the Association is to negotiate collective bargaining agreements with building trade unions. In negotiating these agreements, the Association represents all of the employers who are its members. Such member-employers are bound to the agreements negotiated by the Association.[3]

Lindgren remained a member of the Association until May 13, 1969 when the Association terminated its membership for nonpayment of dues.[4] During the term of Lindgren's membership in the Association, the Association on behalf of its members entered into a series of labor agreements with the District Council, as follows: June 1, 1957 through May 31, 1962; June 1, 1962 through May 31, 1967; June 1, 1967 through May 31, 1972. Subsequently the 1967–1972 agreement was amended, for wages and benefits only, on June 1, 1972 for one year and again on June 1, 1973 for two years.

The District Council was notified that Lindgren was a member of the Association.[5] At no time, however, was the District Council notified that Lindgren's membership in the Association had been terminated or that Lindgren had withdrawn from the Association. As far as the District Council was concerned, therefore, Lindgren remained a party to the 1972 and 1973 agreements. In any event, on June 9, 1971 Lindgren and the District Council entered into a Memorandum of Agreement which incorporated the 1967 agreement and specifically required Lindgren to pay "the amounts under [this] agreement" to the Funds.[6]

Lindgren contributed to the Funds for the month of June, 1968 through September, 1969, and April through October, 1971.[7] On October 31, 1973 Lindgren signed another Memorandum of Agreement which, like the 1971 Memorandum, incorporated the 1967 agreement, specifically required Lindgren to contribute to the Funds in accordance with this agreement, and "affirm[ed] said agreement from June 1, 1967 together with all amendments."[8]

---

2. See the affidavit of Jan Sutherland. In March 1968 the Mason Contractors' Association of Cook County merged with the Associated Masonry Contractors of Metropolitan Chicago to form the Mason Contractors' Association of Greater Chicago. Lindgren remained a member of the merged Association until its expulsion.

3. See the affidavit of Jan Sutherland; Article XII, Section 2 of the Association's by-laws.

4. See the affidavit of Jan Sutherland.

5. See the affidavit of Jan Sutherland and James Caporale.

6. See the affidavit of James Caporale.

7. See the affidavit of James Caporale.

8. The Reports of Payment form which accompanied the 1971 contributions, and which Gerald Lindgren signed on behalf of Lindgren, provides in relevant part:

"We hereby certify that this report includes all hours worked by all laborers in our employ for the month shown above and further, that the employer hereby

As shown in Mr. Caporale's affidavit, the 1971 Memorandum was procured only because Lindgren had ceased making all of the required Trust Fund contributions. The 1973 Memorandum was secured only after Lindgren had claimed, in response to the Trustees' efforts to require Lindgren to adhere to his Trust obligations, that, for the first time, he was no longer a member of the Association.

### I. THE PLAINTIFFS MAY MAINTAIN THEIR ACTION IN THIS COURT PURSUANT TO 29 U.S.C. § 185.

This Court's jurisdiction over the instant action is predicated on Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) which provides in relevant part:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ In the instant action the employer (Lindgren) is a party to the Collective Bargaining Agreement,[9] as a consequence of agreements its Association negotiated on its behalf, the two Memoranda of Agreement one of its partners signed and the ratification of the labor agreements. Looking at the substance of the relationship between the parties there is nothing to be gained by requiring a suit by the union rather than by the Trustees of its Funds.[10]

■ The United States Supreme Court has directed that Section 301 is not to be given a narrow meaning; Section 301 is designed to vindicate individual employees rights arising from a collective bargaining contract. Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Vindication of such rights is the purpose of this suit, and thus the jurisdiction of this Court over the instant matter is proper and appropriate. This finding follows similar rulings by Federal Courts in other districts. See Trustees v. Wolhsberger Roofing Works, Civ. No. 67–300, 66 LRRM 2047 (E.D. N.Y.1967); Hann v. Harlow, 271 F. Supp. 674 (D.C.Or.1967); Schlect v. Hiatt, *supra*; Calhoun v. Bernard, *supra*; Owen v. One Stop Food & Liquor Store, Inc., 359 F.Supp. 243 (N.D.Ill. 1973); Thomas v. Old Forge Coal Co., 329 F.Supp 1000 (M.D.Pa.1971); Carpenters Pension Fund v. Wachsberger Roofing, 66 LRRM 2682 (D.C.Or.1967). It is clear that the labor union (District Council) is not an indispensable party to

---

subscribes to and agrees to be bound by the provisions and terms of the Trust Agreement between Construction and General Laborers' District Council of Chicago and Vicinity, dated May 25, 1950, the Laborers' Pension Fund dated June 1, 1963, and the Laborers' Holiday Pension Fund dated May 31, 1968, and accepts all of them as fully, as though the same were herein contained and further agrees to accept as a personal obligation for himself and on behalf of his firm, to oversee the payment of the established rates of contributions to the aforesaid funds."

9. The Memoranda of Agreement are themselves enforceable collective bargaining agreements. Schlecht v. Hiatt, 271 F.Supp. 644 (D.C.Or.1967), reversed on other grounds, 400 F.2d 875 (9th Cir. 1968); Cal-

houn v. Bernard, 333 F.2d 739 (9th Cir. 1964); Bartenders v. Nationwide Downtowner Motor Inns, 229 F.Supp. 413 (W.D. Mo.1964).

10. The Seventh Circuit has held that Trustees of a Welfare and Retirement Fund are the real parties in interest in a suit to recover sums due to the fund by an employer. Lewis v. Quality Coal Corporation, 243 F.2d 769 (7th Cir. 1957). See also, United Mine Workers of America District 22 v. Roncco, 314 F.2d 186 (10th Cir. 1963); International Ladies Garment Workers v. Jay-Ann Co., 228 F.2d 632 (5th Cir. 1956). While these courts have held that Trustees are indispensable parties to such suits when they are brought by a Labor Union, the converse is not true.

this litigation and that this Court has jurisdiction over the instant action.

■ The defendant contends that since, under the Pension Trust, an "Employer shall cease to be an Employer . . . 'when' . . . as determined by the Trustees, . . . he is delinquent in his contributions or reports to the Pension Fund", the Trustees by filing this suit have determined that the defendants are delinquent and thus they cease to be an employer and this Court ceases to have jurisdiction over the instant action. This contention of the defendants is without merit.

Article V, Section 4 of the Pension Trust provides in relevant part:

"The Trustees may take any action necessary to enforce payment of contributions and penalties due thereunder, including, but not limited to, proceedings at law and in equity."

While under the provision of Article XI, Section 1 of the Pension Trust the Trustees may "determine that an Employer shall cease to be an Employer" because of his delinquencies, the mere filing of a suit pursuant to Article V, Section 4 is not tantamount to such "determination". Were this not so, the Trustees would be foreclosed from exercising their discretion because every employer could avoid his liability by claiming that the filing of a suit to establish liability automatically terminated his obligations. Such a result would be contrary to the intent and purpose of the respective Trust Funds.

Further, even if the defendants were to cease to be an employer pursuant to the Pension Trust, they still appear to be an employer for the purpose of a suit under Section 301. Section 301(a) of the Labor Act, 29 U.S.C. § 185(a), sanctions a suit " . . . for violation of contracts between an employer and a labor organization." Section 2(2) of the Act, 29 U.S.C. § 152(2), defines an employer in the broadest possible terms as any "person" acting "as an agent of an employer . . . ". This broad, all encompassing statutory definition of "Employer" cannot be displaced by self-limiting, private definitions. N. L. R. B. v. E. C. Atkins & Co., 331 U.S. 398, 67 S.Ct. 1265, 91 L.Ed. 1563 (1947), rehearing denied, 331 U.S. 868, 87 S.Ct. 1725, 91 L.Ed. 1872. To permit such a self-limiting, private definition would be to permit an employer, in a labor agreement or other private agreement to define himself as "non-employer" and so exculpate himself from liability in a suit brought by a labor organization or, as here, by the beneficiary of a labor agreement. This result was clearly not contemplated by Congress when it permitted actions for breach of a labor agreement. The plaintiff has adequately alleged that the defendants are an employer pursuant to 29 U.S.C. § 152(2).

The defendants also contend that the Memorandum of Understanding, which was only signed by the Administrator of the Funds, is unenforceable against the trustees and by virtue of the doctrine of mutuality of obligation, is unenforceable against the defendants. This contention of the defendants is not well taken.

■ It is clear that the signature of the Administrator amounts to a simple acknowledgement that the Trustees have received the Memorandum of Agreement. The defendants' obligation is predicated upon the labor agreements to which they are a party, as well as the underlying Pension Trust Agreement to which the defendants and all the Trustees apparently are a party. The plaintiff has adequately alleged a violation of a labor contract between an employer and a labor organization.

■ It is well settled that an employer is bound to contracts negotiated by an association by virtue of its membership and its authorization to the association to negotiate the contracts. Garment Workers v. Miami Casuals, Inc., 456 F.2d 799 (5th Cir. 1972). It is not necessary that the defendants, as an employer, sign the agreement, if they are a member of an employers' association. Garment Workers v. Miami Casuals, Inc., *supra*; Farina Bros. Co. v. Carpen-

ters, Local 107, 152 F.Supp. 423 (D.C. Mass.1957).

■ The plaintiffs adequately allege in their instant amended complaint that the defendant partnership did join the putative association in 1961 and at no time did the defendants notify the District Council in writing or otherwise of the defendants' attempted withdrawal from the multi-employer Association unit. It is well settled that an employer may not withdraw from a duly established multi-employer bargaining unit, except upon adequate written notice, given prior to the date set by the contract for modification or to the agreed upon date to begin the multi-employer negotiations. N. L. R. B. v. Jefferson Banknote Co., 281 F.2d 893 (9th Cir. 1960); N. L. R. B. v. Sheridan Creations, Inc., 357 F.2d 245 (2nd Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 711, 17 L.Ed.2d 544 (1967); Detroit Newspaper Publishers Association v. N. L. R. B., 372 F.2d 569 (6th Cir. 1967). Such timely notice must be conveyed to the union. Universal Insulation Corporation v. N. L. R. B., 361 F.2d 406 (6th Cir. 1966); N. L. R. B. v. Sklar, 316 F.2d 145 (6th Cir. 1963); N. L. R. B. v. Sheridan Creations, Inc., *supra*. It is clear to this Court that the defendants have failed to adequately establish, at this time, that they had effectively withdrawn from the Association.

■ The defendants finally contend that on the face of the complaint any liability prior to a period of five years from the filing of the instant action is barred by the Illinois Statute of Limitations governing actions on implied contracts. See Chapter 83, Section 17 of the Illinois Revised Statutes.

It is clear to this Court that the plaintiffs' amended complaint, on its face, does not violate the relevant Illinois Statute of Limitations.

The plaintiffs adequately contend that:

1. Liability attached on March 30, 1961, the date the defendant joined the Association, thus accepting a written contract.

2. It is undisputed that starting in June, 1968, and continuing at intervals through October 1971, defendant made payments to the Funds and written promises to pay in the form of signed reports, thereby reiterating their obligation and evidencing their previous promises.

3. On June 1, 1967 and October 10, 1973, defendants, by executing the respective Memoranda of Agreements, again promised to pay their prior obligation.

4. Thus the 10 year Illinois Statute of Limitations applies to the instant action because there were payments, coupled with numerous promises in writing, to pay the pre-existing obligations required under written Collective Bargaining Agreements, reviving the 1961 promise.

It is apparent that the 1961–1963 obligations are not barred because the defendants' later payments and written promises to pay have revived them. See Kopel v. Board of Education of the City of Chicago, 1 Ill.App.3d 1083, 275 N.E. ed 772 (1971); In re Jorgensen, 70 Ill. App.2d 398, 217 N.E.2d 290 (1966).

It is clear to this Court that the plaintiffs in the instant amended complaint have adequately stated a cause of action against the defendants and that this Court has jurisdiction over this Action.

II. THE CROSS–MOTIONS FOR SUMMARY JUDGMENT SHOULD BE DENIED.

■ It is the opinion of this Court, after carefully examining the relevant pleadings, memoranda, affidavits and exhibits that there exist genuine issues of material fact which preclude this Court from granting summary judgment of this time.

This ruling should not be interpreted as barring the parties, after adequate

852

pre-trial discovery, from bringing whatever motions they may deem appropriate. If, after adequate discovery, the parties wish to proceed by way of a motion for summary judgment, it is advisable that the parties submit, in addition to the appropriate memoranda, exhibits and affidavits filed in support of their respective positions, a stipulation of facts and legal issues to be determined by this Court.

Accordingly, it is hereby ordered that the defendants' motion to dismiss is denied and the cross-motions for summary judgment are denied.